**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DETROIT PUBLIC SCHOOLS PROGRAM
MANAGEMENT TEAM, LLC, AND LEXINGTON
INSURANCE COMPANY, INC.,

        Plaintiffs,

v.                                                                    Case No. 09-11915

VALLEY FORGE INSURANCE COMPANY,

        Defendant.
                                            /

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Pending before the court are cross motions for summary judgment. The motions have been fully briefed, and the court has concluded that no hearing on the motions is necessary. *See* E.D. Mich. LR 7.1(e)(2). Because Plaintiffs' claim requires the resolution of disputed issues of material fact, summary judgment is inappropriate for either side and the court will deny both motions.

**I. BACKGROUND**[1]

The single issue in this case is whether Defendant owes the Detroit Public Schools Program Management Team, LLC (DPSPMT) a duty to defend Plaintiff DPSPMT's members in an underlying state tort case, *Beavers v. Barton Malow, Co.* The other Plaintiff, Lexington Insurance Co. ("Lexington"), is an insurance company with

---

[1]The following facts are undisputed unless otherwise noted.

an acknowledged duty to defend DPSPMT's members in the underlying *Beavers* lawsuit.

DPSPMT is a Michigan limited liability company organized to act as Detroit Public Schools' ("DPS's") agent for the purposes of managing DPS's obligations under a 1994 bond program, known as the Capital Improvement Program. Pursuant to its obligations to DPS, DPSPMT arranged for and recommended that DPS enter into a contract with Jenkins Construction ("Jenkins"). (Joint App'x ¶ 3.) On November 7, 2001, Jenkins entered into an agreement with DPS, the Agreement for Consulting Services ("Consulting Agreement"). (*Id.* at ¶ 3, Ex. B.) Pursuant to the terms of the Consulting Agreement, Jenkins was responsible for "[p]roviding preconstruction services in support of the New Cass Technical High School project," including managing, procuring bids, planning, and scheduling. (*Id.*) As part of its duties under the Consulting Agreement, Jenkins was overseeing the demolition of the Tanner Storage and Moving Building ("Tanner Building"), which was owned by DPS. (*Id.* at ¶ 2.)

On December 18, 2001, Rick Beavers, a Jenkins employee, inspected the Tanner Building pursuant to Jenkins's duties under the Consulting Agreement. (*Id.* ¶ 3.) Beavers was accompanied by Robert Smith, an employee of Barton Malow, which is a DPSPMT member. (*Id.* at ¶ 2.) Smith was assigned to work with DPSPMT. (*Id.*) During the inspection Beavers fell from a loading dock and was injured. (*Id.*)

On March 24, 2003, Beavers filed a lawsuit in Michigan state court seeking to recover damages caused by his fall off the loading dock in the Tanner Building. He sued Barton Malow Co., Jomar Building Co., Spillis Cardela, and DMJM, all of which are members of DPSPMT; Beavers also sued Robert Smith.

On the date of the accident, the Consulting Agreement was in effect. (*Id.* at ¶ 3.) There were no other contracts between DPS and Jenkins in effect on December 18, 2001. (*Id.*) Moreover, there were no contracts between DPSPMT and Jenkins that were in effect on that date. (*Id.*)

Plaintiff Lexington issued a general liability insurance policy to its named insured, DPSPMT. This policy (the "Lexington Policy") obligates Lexington to pay for the DPSPMT members' defense costs in the *Beavers* case, and Lexington has been defending the DPSPMT members in the *Beavers* case pursuit to its policy. (*Id.* at ¶¶ 4-5.) Defendant issued a commercial insurance policy, Policy Number C 2045349698 (the "Valley Forge Policy"), to its named insured, Jenkins, effective from January 4, 2001, to January 4, 2002. Defendant also issued a Contractor's Blanket Additional Insured Endorsement (Blanket Endorsement), which provided insurance coverage to additional insureds under certain circumstances. Specifically, the Blanket Endorsement amended Jenkins's policy to add as an "insured any person or organization . . . whom [Jenkins] is required to add as an additional insured on this policy under . . . a written contract or agreement." (Joint App'x Ex. C at 24.) Further, the Blanket Endorsement provides insurance to an additional insured covering only liability "arising out of [1] [Jenkins's] premises; [2] '[Jenkins's] work' for that additional insured; [3] Acts or omissions of the additional insured in connection with the general supervision of '[Jenkins's] work.'" (*Id.*)

3

On April 21, 2003, Plaintiff Barton Malow wrote a letter to Jenkins and CNA Insurance Companies[2] ("CNA") tendering the defense of the DPSPMT members. Barton Malow claimed that it and the rest of the DPSPMT members were additional insureds pursuant to the Valley Forge Policy and the Blanket Endorsement. In May of 2003, after CNA requested documentation of Barton Malow's claim, Barton Malow produced the "Jenkins Construction Contract," which Barton Malow initially claimed obligated Jenkins to insure it and the other DPSPMT members. In a letter dated August 26, 2003, Barton Malow admitted that the "Jenkins Construction Contract" did not apply because it was executed five months after Beavers's accident. (Joint App'x Ex. K.) Instead, Barton Malow wrote that there was a second contract: "Professional Services Contract for pre-construction services, dated 11/01, which does not include an Exhibit providing insurance to Jenkins by the Owner; . . . Therefore, we again request . . . defense for [the DPSPMT members]." (*Id.*) On May 30, 2008, Barton Malow sent Defendant a copy of the Consulting Agreement and tendered a defense specifically based on that agreement.[3]

---

[2] Defendant is a subsidiary of CNA. (Def.'s Disclosure of Corporate Affiliations, 1.)

[3] At various points in their briefs the parties discuss when Defendant had notice of the existence of the Consulting Agreement, and they discuss whether this notice was "reasonable" in broad terms. Defendant does not, however, articulate any specific argument with citations to law or contract language supporting a conclusion that it should be relieved of a duty to insure DPSPMT because it did not receive notice of the Consulting Agreement until May of 2008. Accordingly, the court will not address the issue beyond noting that Defendant had notice of a potential obligation as early as April of 2003 and could have contacted its named insured at that point to obtain the relevant contracts, including, presumably, the Consulting Agreement.

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial.  *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).  The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial."  *Horton,* 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587).  Summary judgment is not appropriate

when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment—the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration in original) (citation omitted)). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

### III. DISCUSSION

Plaintiffs argue that the Consulting Agreement required Jenkins to make DPSPMT an additional insured on Jenkins's commercial general liability insurance policy. Plaintiffs further argue that Jenkins named DPSPMT as an additional insured, and that this is reflected by the Blanket Endorsement issued by Defendant. The Blanket Endorsement provides coverage for additional insureds where Jenkins is doing *work for the additional insured* or where Jenkins is *under the general supervision of the additional insured*. Plaintiffs claim that DPSPMT is covered under both of these circumstances. Plaintiffs further contend that Defendant is obligated to provide primary coverage.

6

Defendant argues that Jenkins had no contractual obligation to name DPSPMT as an additional insured when Beavers was injured, and therefore the Blanket Endorsement does not apply.  Defendant also argues, in the alternative, that it owes DPSPMT no coverage because Beavers's injury did not involve work done by Jenkins for DPSPMT, and Jenkins was not under DPSPMT's general supervision when Beavers was injured.  As a final, alternative argument, Defendant maintains that any coverage would be in excess or pro rata based on the limits of its coverage compared with those provided by other insurers, viz. Lexington.

### A.  Written Contractual Obligation

The parties agree that the Consulting Agreement is the only contract that could trigger Defendant's obligation to cover DPSPMT as an additional insured.  The issue is, then, whether the Consulting Agreement obliged Jenkins to name DPSPMT as an additional insured.  Plaintiff argues that this obligation was found in one of the Consulting Agreement's exhibits—specifically, an exhibit which was mislabeled "H" rather that "E."  The Consulting Agreement specifically refers to exhibits A-E, and states that Jenkins's insurance obligations are detailed in "Exhibit E."  The parties agree that no exhibit labeled "Exhibit E" was attached to the Consulting Agreement.  Plaintiff, however, argues that Exhibit E was mislabeled Exhibit H, but that Exhibit H was attached to the Consulting Agreement, and the contracting parties (DPS and Jenkins), intended for it to be a part of the agreement.  According to Plaintiffs, Exhibit H obligates Jenkins to name DPSPMT as an additional insured.  Defendant argues that Exhibit H was never intended to be a part of the Consulting Agreement.

7

Whether Jenkins and DPS intended Exhibit H to be a part of the Consulting Agreement turns on whether it was mislabeled but attached to the Consulting Agreement with the rest of the exhibits—a question of fact. It is a material question of fact, because without the inclusion of the exhibit, Jenkins had no written obligation to name DPSPMT as an additional insured, and Defendant would therefore have no obligation to insure DPSPMT under the Blanket Endorsement.

The record contains some evidence suggesting that mislabeled Exhibit H was intended to be a part of the Consulting Agreement. The Consulting Agreement mentions an exhibit detailing Jenkins's obligations to provide insurance, so the existence of *some* exhibit detailing Jenkins's insurance obligations is expected. There is deposition testimony suggesting the Exhibit H was found associated with the Consulting Agreement in both DPSPMT's and Jenkins's files. Plaintiffs also argue that an alleged fax copy of an insurance certificate supports the conclusion that Exhibit H was intended to be a part of the Consulting Agreement. The fax number for the insurance agent associated with the Valley Forge Policy is included in the fax's header. The header also contains "VTC" which is consistent with an abbreviation of the insurance agent's name, Valenti, Trobec, and Chandler. The fax is dated November 7, 2001, the same day that Jenkins executed the Consulting Agreement. The fax itself is a two-page insurance certificate, a 1985 edition of a fill-in-the-blank form published by the Insurance Services Office, Inc. ("ISO"). The name of the form is "CG2010185," the same type of form that Exhibit H requires be issued. The certificate lists Jenkins as the named insured and DPSPMT is listed as the additional insured. Accordingly, the fax is

consistent with Jenkins entering in an agreement to name DPSPMT as an additional insured.[4]

On the other hand, there is evidence that Jenkins and DPS did not intend for Exhibit H to be a part of the Consulting Agreement. The Consulting Agreement refers to an Exhibit E, and the Exhibit to which Plaintiffs appeals is, of course, labeled Exhibit H. Exhibit H is printed in a different font than the rest of the Consulting Agreement, and its title, "Exhibit H," is underlined and in uppercase, while the other exhibit titles are in lowercase, not underlined, and have quotation marks around the letter, e.g., Exhibit "B." Exhibit H refers to the obligations of an architect—Jenkins does not perform architectural work. Defendant also points to evidence questioning the authenticity of the fax. The certificate form is commonly available. It is a 1985 edition, while numerous other editions have been published between 1985 and when the Consulting Agreement was executed. The fax does not have a standard cover sheet. And even assuming that the fax was sent as indicated by its date, it could have been sent to or from the insurance agent. So it did not necessarily originate from the agent's office. Defendant also points out that the insurance coverage described in Exhibit H does not correspond to the insurance purchased by Jenkins.

Defendant also argues that the deposition testimony of James Jenkins supports the proposition that Exhibit H was not a part of the Consulting Agreement. James Jenkins signed the Consulting Agreement for Jenkins. Defendant maintains that his

---

[4] Plaintiffs do not appear to be arguing that the alleged fax copy of the insurance certificate itself obligates Defendant to provide insurance coverage to DPSPMT. Instead, Plaintiffs argue that the fax is evidence that Exhibit H was part of the Consulting Agreement, and, therefore, Defendant has an obligation to insure Plaintiffs under the Blanket Endorsement.

testimony strongly suggests that Exhibit H was not a part of the Consulting Agreement. Plaintiffs maintain that the testimony merely stands for the proposition that Exhibit H was not mentioned in the body of the agreement, rather than demonstrating that the parties did not intend for Exhibit H to be incorporated in the contract. The testimony, read in whole, is equivocal—in fact, at one point James Jenkins appears to ask the questioning attorney whether Exhibit H was included as a part of the Consulting Agreement, and he admits "I don't know if Exhibit H was attached." (Joint App'x, Ex. EE 32-33.) Moreover, even if James Jenkins's testimony is interpreted in the manner suggested by Defendant, a jury could always discount it. The deposition testimony could be seen as somewhat evasive or defensive, thus cutting into James Jenkins's credibility and supporting the conclusion that a jury could afford it little weight.

Because the record contains conflicting evidence on whether Exhibit H was intended to be incorporated into the Consulting Agreement, the issue is one of material fact that must be submitted to a jury.

### B. Requirement That Jenkins Was Working for DPSPMT or under DPSPMT's General Supervision

Even if there is a disputed issue of material fact as to whether Exhibit H was a part of the Consulting Agreement, Defendant may still prevail on summary judgment if the Blanket Endorsement does not provide coverage regarding the *Beavers* case. The issue is whether Beavers's work for Jenkins when he was injured was (1) "work for" DPSPMT; or (2) work under DPSPMT's "general supervision."

When interpreting a contract, the court must construe the language "according to its plain and ordinary meaning, and technical or constrained constructions are to be avoided." *Dillon v. DeNooyer Chevrolet Geo*, 550 N.W.2d 846, 848 (Mich. Ct. App.

10

1996). The court "does not have the right to make a different contract for the parties" when the terms of the contract are unambiguous. *Sheldon-Seatz, Inc. v. Coles*, 29 N.W.2d 832, 834-35 (Mich. 1947). The question of whether a contract is ambiguous is a question of law. *Port Huron Educ. Ass'n, MEA/NEA v. Port Huron Area Sch. Dist.*, 550 N.W.2d 228, 237 (Mich. 1996). But where the language of the contract is "unclear or susceptible to multiple meanings," then the interpretation of the contract is a question of fact. *Id.* To determine whether there was mutual assent to a contract or a particular contract term, Michigan courts "use an objective test, 'looking to the expressed words of the parties and their visible acts'" and ask whether a reasonable person could have interpreted the words or conduct in the manner that is alleged. *Rowe v. Montgomery Ward & Co.*, 473 N.W.2d 268, 273 (Mich. 1991).

When Beavers was injured he was working for Jenkins—he was inspecting the Tanner Building to check for asbestos abatement and the existence of elevators. The work was in preparation to accept bids for the demolition of the Tanner Building, which Jenkins was doing pursuant to its obligations to DPS under the Consulting Agreement. DPSPMT was supervising the asbestos abatement in the Tanner Building, and Smith, a Barton Malow employee assigned to DPSPMT, was therefore accompanying Beavers during Beavers's inspection.

Defendant argues that the occurrences that led to Beavers's injury did not involve Jenkins's *work for* DPSPMT, and therefore it has no obligation to insure DPSPMT under the Blanket Endorsement. Because the Blanket Endorsement's requirement of "work for" is ambiguous, Defendant's argument for summary judgment based on this issue must be rejected. Defendant argues that Beavers was conducting an inspection for Jenkins pursuant to a contract with DPS, not DPSPMT. The work was for DPS, not for

11

DPSPMT, and the coverage provided by the Blanket Endorsement therefore does not apply. But, as the Consulting Agreement points out, DPSPMT was a de facto third-party beneficiary to the contract between Jenkins and DPS, because Jenkins's work relieved DPSPMT of some of its obligations to DPS. Under some circumstances, work pursuant to a contract could be considered "work for" a third-party beneficiary to that contract; especially, in a case such as this, where the contract expressly states that the contract will benefit the particular third party. Admittedly, there is merit to Defendant's argument that the Blanket Endorsement does not require an insurer to cover an additional insured in circumstances where there is "no business relationship between the named insured and the additional insured." (Def.'s Mot. 20.) But the Blanket Endorsement's "work for" requirement is ambiguous in a case such as this, where, though there is no privity of contract between the additional and named insured, the additional insured receives a benefit from the named insured's activities. Accordingly, the issue reduces to whether the parties to the Blanket Endorsement, Jenkins and Defendant, objectively manifested an intent for the Blanket Endorsement's "work for" requirement to cover additional insureds in situations such as this. This question is one of fact, and, given the current record, is one that cannot be decided by the court on summary judgment.

Plaintiffs also argue that the Blanket Endorsement provides DPSPMT with coverage concerning *Beavers*, because Jenkins was under DPSPMT's "general supervision." Defendant responds that DPSPMT was supervising asbestos abatement, not Jenkins, which was in charge of managing the demolition of the Tanner Building. Plaintiffs respond that while this is true, DPSPMT was supervising Jenkins as a part of

12

DPSPMT's managing duties owed to DPS. Supervision, however, unambiguously implies authority to control or direct activities, so in order for the Blanket Endorsement's "general supervision" provision to apply it would seem that DPSPMT would have to have some authority over Jenkins. The Consulting Agreement does provide DPSPMT with some authority over Jenkins: Jenkins had to provide DPSPMT with a list of project personnel and Jenkins could not change project personnel without DPSPMT's written permission. While this is not determinative, as a matter of law, to establish the factual question of whether the Blanket Endorsement's general supervision provision applies, it is enough to establish the question as a disputed issue of material fact that cannot be disposed of on summary judgment.

### C. Primary or Excess Coverage

The parties are also moving for summary judgment on whether any coverage supplied by Defendant would be primary or in excess. The Blanket Endorsement states that coverage is in excess unless the underlying written contract requires primary coverage. The allegedly mislabeled Exhibit H requires primary coverage. The nature of any insurance coverage therefore depends on a disputed issue of fact, viz. whether Exhibit H is a part of the Consulting Agreement. Summary judgment on this issue is thus inappropriate.

### IV. CONCLUSION

Because whether the Consulting Agreement between Jenkins and DPS included a term obligating Jenkins to name DPSPMT as an additional insured, and whether any

such insurance would cover the *Beavers* case are disputed issues of material fact, summary judgment is inappropriate, and the parties' cross motions will be denied.

IT IS ORDERED that "Plaintiffs' Motion for Summary Judgment" [Dkt. # 22] is DENIED.

IT IS FURTHER ORDERED that "Defendant's Motion for Judgment" [Dkt. # 25] is DENIED.

        S/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: April 27, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 27, 2010, by electronic and/or ordinary mail.

        S/Lisa G. Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522