UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DETROIT PUBLIC SCHOOLS, PROGRAM
MANAGEMENT TEAM and LEXINGTON
INSURANCE COMPANY,

      Plaintiffs,

v.                                                Case No. 09-11915

VALLEY FORGE INSURANCE COMPANY,

      Defendant.
                                            /

**FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO RULE 52(a)**

After denying cross-motions for summary judgment, the court held a bench trial on June 28-29, 2010. Pursuant to Federal Rule of Civil Procedure 52(a), the court below presents its findings of fact and conclusions of law. For the reasons that follow, the court finds in favor of Defendant. A separate judgment will be entered.

**I. INTRODUCTION**

Rick Beavers, an employee of Jenkins Construction ("Jenkins"), was injured on December 18, 2001, while inspecting the Tanner Storage & Moving Building at Cass Technical High School, which is owned by the Detroit Public Schools ("DPS"). He sued in Wayne County Circuit Court (case number 03-309389-NO) members of Plaintiff Detroit Public Schools, Program Management Team ("DPSPMT"), a limited liability company, and Robert Smith, an employee of DPSPMT member Barton Malow Company ("Barton Malow"), who was accompanying Mr. Beavers during the inspection.

Plaintiff Lexington Insurance Company ("Lexington") agreed early in the litigation that it had a contractual duty to defend that lawsuit as the insurer of DPSPMT.

In the present lawsuit, Plaintiffs DPSPMT and Lexington assert that Defendant Valley Forge Insurance Company ("Valley Forge")[1] also had a contractual obligation to defend that lawsuit, and Plaintiffs seek to recover expenses incurred in so defending.

In an April 27, 2010, opinion and order, the court denied the parties' cross-motions for summary judgment. The court found there was a genuine issue of material fact regarding the terms of an Agreement for Consulting Services ("Consulting Agreement") entered into by Jenkins and DPS, more specifically whether the parties intended an "Exhibit H" covering certain insurance requirements to be part of the Consulting Agreement. (4/27/10 Order 7-10.) The court also found there was a genuine dispute over whether Mr. Beavers was engaged in "work for" DPSPMT or was under the "general supervision" of DPSPMT at the time of his accident, terms contained within a Contractor's Blanket Additional Insured Endorsement ("Blanket Endorsement") that dictate who is an "additional insured" and under what circumstances Valley Forge would be liable to such an entity. (*Id.* at 10-13.) Finally, the court held there was a genuine issue of material fact regarding whether any coverage provided by the Valley Forge policy constituted primary or excess coverage, because that depends on whether "Exhibit H" is part of the Consulting Agreement. (*Id.* at 13.)

The parties waived a jury trial as part of a May 7, 2010, stipulation and order. The court held a bench trial on June 28-29, 2010.

---

[1] Valley Forge is a subsidiary of CNA Financial Corporation ("CNA").

## II. FINDINGS OF FACT

1. Jenkins entered into the Consulting Agreement with DPS on November 14, 2001.[2] The Consulting Agreement provides for payment to Jenkins in the amount of $250,000 for "pre-construction services for the new Cass Technical High School" and includes references to exhibits "A" through "E." (J.A. Ex. B.)

2. The Consulting Agreement requires Jenkins to indemnify DPS, but is silent with respect to DPSPMT. (J.A. Ex. B ¶ 8.)

3. Under the Consulting Agreement, Jenkins was required to "provide insurance in accordance with the attached document marked Exhibit E." (J.A. Ex. B ¶ 6.)

4. There was no "Exhibit E" attached to or included with the Consulting Agreement between DPS and Jenkins.

5. There existed an "Exhibit H" attached to two copies of the Consulting Agreement, as found within Jenkins's files and at Barton Malow.

6. Paragraph 7 of "Exhibit H" requires the architect contracting with DPS to name DPSPMT as "additional insureds" on the architect's commercial general liability policy.

7. Valley Forge issued commercial general liability policy number C 2048349698 to Jenkins, covering the period from January 4, 2001, to January 4, 2002.

8. The Blanket Endorsement, form number G-17957-F, amends the commercial general liability policy to, among other things, cover as an "additional insured"

---

[2] Mr. Jenkins dated the agreement on November 7, 2001, and DPS's executive dated the agreement November 14, 2001.

"any person or organization" the insured is required to add under a "written contract or agreement." (J.A. Ex. C.)

9. Jenkins also entered into a Construction Management Agreement with DPS, effective on or about February 1, 2002, after the date of Mr. Beavers's accident. That contract does not govern liability in this action, but does refer to certain insurance requirements in an "Exhibit A," which was in fact attached. (J.A. Ex. U.)

10. Lexington was required to provide coverage and a defense to the defendants in the underlying case. Lexington issued policy number 0153368 to its named insured, "DPS Program Manager Team, LLC," covering the period of July 27, 2001, to July 27, 2002. (J.A. Ex. D.) That period includes the date of the accident in the underlying case.

11. Lexington agreed that "[c]overage for this loss is afforded under Policy Number 0153368 issued to DPS Program Manager, LLC . . . ." (J.A. Ex. AA.) Lexington has conceded that if the named insured is a limited liability company, its members are covered as insureds as well.

### III. CONCLUSIONS OF LAW

1. This is a diversity action in which the court applies federal procedural law and state substantive law. *See Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

2. The primary goal in contract interpretation is to ascertain and effectuate the intent of the parties. To that end, the contract is read as a whole. *Old Kent Bank v. Sobczak*, 620 N.W.2d 663, 666-67 (Mich. Ct. App. 2000).

3.  The interpretation of a contract is a question of law.  Contractual language is given "its ordinary and plain meaning if such would be apparent to a reader of the instrument."  *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 780 (Mich. 2003); *accord Raska v. Farm Bureau Mut. Ins. Co. of Michigan*, 314 N.W.2d 440, 440-41 (Mich. 1982); *Kingsley v. Am. Cent. Life Ins. Co.*, 242 N.W. 836 (Mich. 1932).

4.  If a provision in an insurance policy "is clear and unambiguous, the terms are to be taken and understood in their plain, ordinary, and popular sense."  *Clevenger v. Allstate Ins. Co.*, 505 N.W.2d 553, 557 (Mich. 1993).

5.  Insurance policies are construed according to the plain meaning of their terms.

6.  An insurance company cannot be forced to insure a risk it did not assume.  *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (Mich. 1991).

7.  Courts will not rewrite the terms of an insurance policy "as long as the terms do not conflict with pertinent statutes or public policy."  *St. Paul Fire & Marine Ins. v. Am. Home Assurance Co.*, 514 N.W.2d 113, 115 (Mich. 1994).

8.  Where the parties intended to include provisions in a contract but fail to do so, and the resulting written agreement is incomplete on its face, courts may use parol evidence to "fill the gap" in the contract.  *See UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 415, 418 (Mich. Ct. App. 1998).

9.  "A generally recognized principle of insurance law is that the burden of proof lies with the insured to show that the policy covered the damage suffered."  *Solomon v. Royal Maccabees Life Ins. Co.*, 622 N.W.2d 101, 103 (Mich. Ct. App. 2000); *accord Williams v. Detroit Fire & Marine Ins. Co.*, 273 N.W. 452, 453 (Mich. 1937).

10. The party seeking insurance coverage bears the burden of proof that coverage applies, and in particular must show that the terms of the insurance policy cover the damages in question. *Star Steel Supply Co. v. United States Fid. and Guar. Co.*, 465 N.W.2d 17, 19-20 (Mich. Ct. App. 1990).

11. Insurance policies, not insurance certificates, govern insurance coverage. *Boseman v. Connecticut Gen. Life Ins. Co.*, 301 U.S. 196, 202 (1937).

12. An independent insurance agency is an agent of the insured and not an agent of the insurer. *W. Am. Ins. Co. v. Meridian Mut. Ins. Co.*, 583 N.W.2d 548, 550 (Mich. Ct. App. 1998); *Mayer v. Auto-Owners Ins. Co.*, 338 N.W.2d 407, 409 (Mich. Ct. App. 1983).

13. "The duty to defend is related to the duty to indemnify in that it arises only with respect to insurance afforded by the policy.  If the policy does not apply, there is no duty to defend.  However, the scope of the two duties is not identical; the duty to defend is broader than the duty to indemnify.  If the allegations of a third party against the policyholder even arguably come within the policy coverage, the insurer must provide a defense." *Am. Bumper and Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 481 (Mich. 1996) (citations omitted) (citing *Protective Nat'l Ins. Co. of Omaha v. City of Woodhaven*, 476 N.W.2d 374, 375-76 (Mich. 1991)).

14. "'The duty to defend does not depend upon the insurer's liability to pay, however since the insurer's duty to defend stems from its own contractual obligation to the insured, while its ultimate liability to pay on behalf of the insured depends upon the law of negligence, and since the usual policy provisions requiring the insurer to defend cannot be construed to impose such a duty only in the case of

successful suits against the insured.'" *Am. Bumper*, 550 N.W.2d at 481 n.12 (quoting David S. Garbett, Comment, The Duty to Defend Clause in a Liability Insurance Policy: Should the Exclusive Pleading Test be Replaced?, 36 U. Miami L. Rev. 235, 236-37 (1982)).

15. An insurer with an obligation to defend who fails to fulfill that obligation "becomes liable for all foreseeable damages flowing from the breach." *Stockdale v. Jamison*, 330 N.W.2d 389, 392 (Mich. 1982).

## IV. APPLICATION OF LAW TO FACTS

1. DPS and Jenkins intended to impose through the Consulting Agreement a contractual obligation on Jenkins to obtain insurance.

2. The Consulting Agreement, which was in effect between Jenkins and DPS at the time of the accident in the underlying case, did not, by its terms, require Jenkins to indemnify DPSPMT or any of its members.

3. According to the plain meaning of the agreement, Jenkins was required to obtain an insurance policy that complied with the requirements set forth in a certain "Exhibit E."

4. No "Exhibit E" was attached to the executed contract.

5. No party has located or proffered any "Exhibit E" that should have been attached to the contract.

6. The Blanket Endorsement is the only endorsement under which Valley Forge or CNA could be held liable. Such liability is premised on "Exhibit H" being a part of the Consulting Agreement.

7. The attached "Exhibit H" was not intended by the parties to be part of the Consulting Agreement. The following evidence leads the court to this conclusion:

   a. "Exhibit H," upon which Plaintiffs rely in their claim that Jenkins was required to obtain insurance coverage, was not referred to in the body of the Consulting Agreement.

   b. All of the other exhibits to the Consulting Agreement were sequentially lettered (exhibits "A" through "D"). Thus, the next exhibit, if any, would have been the referenced "Exhibit E," and not a document entitled "Exhibit H."

   c. "Exhibit H" is written in a font different from all other exhibits. Its header is underlined, rather than in quotes, as in the other exhibits. The body of its text is single-spaced, rather than double-spaced, as in the other exhibits.

   d. "Exhibit H" is designed to define, and repeatedly refers to, the obligations of an architect. There is no dispute that Jenkins is a construction and consulting firm, that it is not an architectural firm, and that it never undertook architectural obligations.

   e. The insurance requirements of "Exhibit H" do not correspond to the coverage actually provided by the Valley Forge policy. "Exhibit H" requires a $2,000,000 aggregate, and the Valley Forge policy contains a $1,000,000 aggregate. "Exhibit H" requires a $2,000,000 products/completed operations aggregate, and the Valley Forge policy contains only a $1,000,000 products/completed operations aggregate. These discrepancies may be interpreted to show that Jenkins's insurance

        agent, Valenti, Trobec, Chandler, Inc. ("VTC"), was incompetent at procuring the insurance required by its client under contract, but the court finds this to be unlikely. The court finds it more likely that VTC was not in possession of "Exhibit H" when it obtained the insurance policy from Valley Forge to comply with the Consulting Agreement. The Valley Forge policy would be consistent with a contract lacking "Exhibit H," and non-compliant with a contract that included "Exhibit H."

8. Further, the testimony of James Jenkins and Milo Mattox supports a finding that "Exhibit H" was not a part of the agreement.

9. Mr. Jenkins testified, consistent with an earlier affidavit, that "Exhibit H" was not a part of the agreement. While Mr. Jenkins also testified that Jenkins would not have purchased insurance unless required to do so by contract, the body of the Consulting Agreement sets forth the general insurance requirement, not the attached exhibit. "Exhibit E," if it had been incorporated into the contract, would have set forth the *details* of the insurance requirement. In addition, Mr. Jenkins testified he would not have signed the Consulting Agreement if "Exhibit H" was a part of it. Mr. Jenkins testified that Jenkins did not typically carry professional liability insurance, and would not have carried professional liability insurance for this type of contract.

10. Mr. Mattox, of Barton Mallow, testified that "Exhibit H" requires professional liability insurance. "Exhibit H" does, in fact, contain that requirement.

11. The requirement of professional liability insurance set forth in "Exhibit H" weighs in favor of a finding that the parties did not intend to incorporate it into the agreement when considered in conjunction with the testimony of Mr. Jenkins.

12. Plaintiffs have not sustained their burden of proof that Valley Forge is obligated to provide insurance coverage and a defense to the defendants in the underlying case as a consequence of any CG 20 10 11 85 additional insured endorsement for these reasons:

   a. Plaintiffs do not maintain that the CG 20 10 11 85 form provides coverage, but rather argue that it is evidence of Jenkins's intent because that form is required to be issued by paragraph 7 of "Exhibit H." Even assuming *arguendo* that Valley Forge and CNA are mistaken, and they did issue a CG 20 10 11 85 certificate, the issuance of the form only shows that Jenkins's intent was to provide *some* insurance as required by contract; it does not necessarily entail a finding that "Exhibit H" was a part of the contract. While the issuance of that form is consistent with a finding that the contract includes "Exhibit H," it is also consistent with a contract having only a generic insurance requirement and with no "Exhibit H." Any corroboration of Plaintiffs' claims provided by the faxed copy of CG 20 10 11 85 and "Exhibit H" is outweighed by other factors.

   b. An insurance certificate does not control insurance coverage. A certificate is not a part of the contract of, or necessary to, the insurance.

   c. As a matter of law, an insurance agency is an agent of the insured and not an agent of the insurer. If an insurance agency issued a certificate of

        insurance or any insurance document reflecting or referring to insurance coverage not authorized, issued, or bound by the insurer, that act does not create insurance coverage.  Therefore, if VTC issued an insurance certificate and an additional insured endorsement in this case, such as a CG 20 10 11 85, and the endorsement was not authorized or approved by CNA, the certificate and the endorsement to which it refers has no effect and does not create any insurance coverage.

    d.    A CNA representative testified in the case under oath that in November of 2001 CNA did not use or authorize the use of any Insurance Services Office ("ISO") CG 20 10 forms.  In addition, by that time CG 20 10 11 85 forms were obsolete and had been superseded by more recent CG 20 10 forms.  The court credits this testimony.

    e.    Notwithstanding VTC's production of a clean copy of the certificate, the faxed copy of the form appears not to have been sent in a manner typical of VTC, in that there is no cover sheet.

13.    The court therefore holds that although Jenkins was required under the Consulting Agreement to purchase insurance, the parties did not intend to be bound by "Exhibit H," and the Consulting Agreement has a gap with respect to the details of the insurance requirement.  DPS and Jenkins intended for the Consulting Agreement to provide detailed insurance requirements, but it is silent as to those details.

14.    There is insufficient evidence in the record for the court to "fill the gap" with the details of the insurance requirement set forth in paragraph 6 of the Consulting

Agreement. Specifically, to the extent that the gap could be filled with any additional insurance requirements, there is insufficient evidence to impose an obligation that DPSPMT be named as an "additional insured," the crucial requirement on which Defendant's potential liability in this action hinges.

15. Plaintiffs' theory of liability for Valley Forge is premised on the requirement set forth in paragraph 7 of "Exhibit H" that "Detroit Public Schools, DPS Program Manager Team, LLC, shall be named as additional insureds on the General Liability policy form . . . ." combined with the provisions in the Blanket Endorsement naming as an "additional insured" "any person or organization" that is required to be added under "[a] written contract or agreement." Because "Exhibit H" was not part of the Consulting Agreement, Valley Forge had no contractual obligation to cover DPSPMT as an additional insured.

16. Because DPSPMT is not an "additional insured" under the Blanket Endorsement issued by Valley Forge, Valley Forge had no contractual obligation to DPSPMT, and Valley Forge therefore had no duty to defend DPSPMT in the underlying action. Mr. Beavers's claim against DPSPMT does not "arguably" come within the coverage of the Valley Forge policy.

17. Accordingly, the court has no occasion to consider the parties' arguments regarding whether Mr. Beavers's work was "work for" or under the "general supervision" of DPSPMT, or regarding the allocation of liability between Plaintiffs and Defendant.

## V. CONCLUSION

Plaintiffs have not met their burden of showing that Defendant was obligated to provide insurance coverage and a defense to the defendants in the underlying case as a consequence of any contractual duty.  The court finds in favor of Defendant and against Plaintiffs.  Judgment will follow separately.

    s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  March 28, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 28, 2011, by electronic and/or ordinary mail.

    s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\09-11915.DPSPMT.BenchTrial.jmp.wpd